UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO.: 07-cr-252 (CKK) |
| v. : | |
| JAMES BAKER, : | |
| Defendant. : | |

### GOVERNMENT'S CONSOLIDATED MEMORANDUM IN AID OF SENTENCING AND MOTION FOR DOWNWARD DEPARTURE

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this consolidated memorandum in aid of sentencing of defendant James Baker and motion for a downward departure under the United States Sentencing Guidelines ("USSG"), § 5K1.1. As will be discussed below, the government believes that an application of the advisory Sentencing Guidelines set forth in ¶3 of the plea agreement (offense level total 10) is appropriate here and, based on the defendant's substantial assistance to the government, moves under Guidelines §5K1.1 for a downward departure of two levels in defendant's offense level to offense level 8.

### FACTUAL BACKGROUND

This case arises as a result of the defendant's role in a conspiracy with Charles Wehausen, a former chief engineer and project manager for PM Services, a U.S. General Services Administration ("GSA") contractor, to fraudulently inflate project costs in order to accommodate kickbacks paid to Wehausen. The defendant, through his company Air Specialties, periodically performed mechanical work for PM Services at the Federal Cohen and Switzer Buildings in Washington, D.C on behalf of the GSA. From late 2001 through mid 2003, at Wehausen's

direction, the defendant created purchase orders for Air Specialties' labor and materials containing falsely inflated prices. At the same time, Wehausen created PM Services invoices containing falsely inflated prices for labor and materials matching those contained in the false purchase orders. These documents were sent to PM Services headquarters in Florida where they were unwittingly relied on by PM Services personnel in order to generate fraudulently inflated checks payable to Air Specialties. After depositing the checks, the defendant paid Wehausen kickback payments equal to the inflated amounts in the form of Air Specialties checks made payable to Wehausen and his company T-n-T Air Conditioning. An example was Air Specialties purchase order no. 1383, dated May 17, 2002, containing an inflated cost figure of $11,593.57 for materials and mechanical work. This purchase order was inflated by approximately $2,500 and the defendant paid Wehausen $2,500 for the transaction through an Air Specialties check (no. 7460), dated November 25, 2002. The total kickback payments made by the defendant to Wehausen was $65,456. Because all of the work in question was performed for the benefit of the GSA, PM Services sought and obtained reimbursement from the GSA. As a result, the GSA ultimately suffered the loss due to the conspiracy.

On November 27, 2007, the defendant pled guilty to a one count Information charging him with conspiracy to commit mail fraud in violation of 18 U.S.C. §371. As part of his plea agreement with the Government, the defendant agreed to cooperate in the investigation of other individuals. On July 3, 2007, prior to the entry of his guilty plea, the defendant met with the undersigned and Federal agents for a debriefing and he provided detailed information about the conspiracy with Wehausen. The defendant's information was credible and has been corroborated by other witnesses and documents. This information was very helpful in further developing the

Government's case against Wehausen who ultimately pled guilty in February, 2008.

## SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Mr. Baker. These factors are discussed below numbered as they are in Section 3553(a).

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant.**

**(A)    Nature and circumstances of the offense**

Here, the nature and circumstances of the offense involved the defendant's multi-year continuing criminal activities to create false documents to deceive Florida officials of PM Services in order to accommodate over $65,000 in kickback payments to Wehausen. This conduct falls squarely within the class of cases to which the applicable Sentencing Guidelines are addressed. Thus, consideration of the nature and circumstances of the offense counsel in favor of a sentence consistent with the Guidelines.

**(B) The history and characteristics of the defendant**

The defendant's history and characteristics also counsel in favor of a Guidelines driven sentence. Here, the PSR reflects that the defendant was professionally, intellectually and emotionally capable of avoiding his criminal conduct, but instead chose to engage in it intentionally and repeatedly. The PSR reflects that the defendant graduated from high school, and attended trade school, ultimately qualifying for a Journeyman's license, ¶ 42. The defendant, in short, was someone who should have known better than to engage in a kickback scheme involving an employee of a Federal contractor that was giving him substantial business. The defendant nevertheless subsequently accepted responsibility for his crime pre-indictment and

consistently cooperated in the investigation of Wehausen. In the government's view, the defendant has also expressed genuine remorse for his illegal conduct.

**(2)  The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the pubic from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

A Guidelines based sentence is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2). Here, as discussed above, the defendant committed a serious felony offense that spanned a period of years. The need for deterrence of others and to promote respect for the law are also important objectives in this case that can be met by an application of the Guidelines.

As to the final consideration, there does not appear to be a need in this case to adjust the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. § 3553(a)(2)(D).

**(3)  The kinds of sentences available**

The maximum term of imprisonment for this crime is 20 years, with a term of supervised release of not more than 3 years.

**(4)  The sentencing range established by the United States Sentencing Guidelines**

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 U.S. 586, 596 (2007). Here, the government and the defendant stipulated in the plea agreement to a Total Adjusted Offense Level of 10 prior to consideration of substantial assistance pursuant to Sentencing

Guidelines Section 5K1.1.

The government believes that offense level 8 after consideration of Section 5K1.1 is appropriate based on the fact that such a sentencing level properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Id.* at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). As stated by the Supreme Court in *Kimbrough*: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.,* (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)).

In *Rita*, the Supreme Court held that an appellate court may presume that a within-Guidelines sentence is reasonable. While this presumption does not apply before the district court, *Rita*, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing Court and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.* at 2463 (emphasis in original).

Further, the advisory Guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 U.S. 586, 597 n.6.

**(5) Any pertinent policy statement issued by the USSC**

The government is unaware of any pertinent policy statements issued by the USSC.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records**

As discussed above, a Guidelines sentence would help prevent such disparities between the defendant and similar defendants.

**(7) The need to provide restitution to any victims of the offense.**

As part of his plea agreement, the defendant has agreed that the Court should issue an order of restitution for $65,456. This amount should be paid by the defendant to the United States.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that the defendant be sentenced to probation in accordance with the low end of advisory Guidelines level 8, together with a three-year period of supervised release.

Respectfully submitted,
JEFFREY A. TAYLOR
United States Attorney
For the District of Columbia

By:     _____/s/_____
JOHN D. GRIFFITH
IA Bar #4622
Assistant United States Attorney
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
(202) 353-2453
john.griffith3@usdoj.gov

Dated: June \_\_, 2008